IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DAVID JAMES MATTHEW, | CV 16-00002-BLG-SPW-CSO |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| YELLOWSTONE COUNTY, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff David Matthew's proposed Complaint (*ECF 1*), Motion for Emergency Review Order of Injunction and Order of Protection (*ECF 2*), request for counsel (*ECF 2-1 at 1*), Motions to Proceed in Forma Pauperis (*ECF 4, 5, 7*), and Motion for Leave to Amend Complaint (*ECF 9*). Matthew alleges a variety of constitutional violations based upon the conditions of confinement at the Yellowstone County Detention Facility ("YCDF"). *Cmplt., ECF 1.*

1

The motions to proceed in forma pauperis will be granted. Because Matthew has failed to identify a specific defendant responsible for the majority of his claims, his motion for leave to amend will be granted and he will be required to file an amended complaint. His motion for appointment of counsel will be denied without prejudice.

The motion for injunctive relief will be denied as moot since Matthew is no longer incarcerated at the Yellowstone County Detention Facility. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995)(the transfer of an inmate to another prison while his claims are pending generally will moot any claims for injunctive relief; *Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 1991) (a prisoner's claims for injunctive relief generally become moot upon transfer.).

## I. MOTIONS TO PROCEED IN FORMA PAUPERIS

On January 7, 2016, Matthew filed two Motions to Proceed in Forma Pauperis but failed to submit an account statement as required by 28 U.S.C. § 1915(a). *ECF 4, 5.* On January 19, 2016, the Court issued an Order requiring Matthew to submit a certified copy of his account statement for the six-month period immediately preceding the

submission of his Complaint.  *ECF 6.*  On February 3, 3016, Matthew filed another Motion to Proceed in Forma Pauperis.  He explained that the Yellowstone County Detention Facility does not handle inmate money or have accounts set up because it was all run by an outside corporation and he did not have the contact information to get an account statement.  *ECF 7.*

The Court is not convinced by Matthew's representations because it has received account statements from YCDF inmates as recently as December 2015.  Nevertheless, in an effort to move this matter forward, the requests to proceed in forma pauperis will be granted.  Pursuant to 28 U.S.C. § 1915(b)(1), Matthew must pay the statutory $350.00 filing fee.  Because Matthew did not submit an account statement, he will not be required to pay an initial partial filing fee but will be required to make monthly payments of 20 percent of the preceding month's income credited to his institutional account.  The percentage is set by statute and cannot be altered.  *See* 28 U.S.C. § 1915(b)(2).  By separate order, the agency having custody of Matthew will be directed to forward payments from Matthew's account to the Clerk of Court each time the

amount in the account exceeds $10.00, until the filing fee is paid in full.
28 U.S.C. § 1915(b)(2).

## II. STATEMENT OF CASE

### A. Parties

Matthew is a federal prisoner proceeding without counsel. He is
currently incarcerated at Crossroads Correctional Center in Shelby,
Montana. *Address Change, ECF 9.* At all times relevant to his
Complaint, Matthew was incarcerated at the YCDF.

Matthew names the following Defendants: Yellowstone County,
Yellowstone County Sheriff, Riverstone Health, the U.S. Marshal
Service, John Doe Doctors, PA Caruso, Nurse Supervisor Scott, Jane
Doe Nurses at Riverstone Health at YCDF, Terry Jessee, Nurse
Vanessa, Lt. Neiter, C/O Shirley, C/O Iron, C/O Singh, C/O Grosslock,
C/O Langford, C/O Washington, C/O Dunker, and Aramark Co. *Cmplt.,
ECF 1 at 5, 9, 10.*

### B. Allegations

In his Complaint, Matthew named 19 defendants and provided a
listing of 38 claims including deliberate indifference to his medical,

mental health and dental needs; an Americans with Disabilities Act (ADA) claim; and claims regarding access to an exercise yard, broken telephones, visitation, mold in the showers, clogged air vents, fire extinguisher outlets rusted shut, overcrowding, one table per cell, poor food quality, overpriced canteen items, lack of legal materials, harassment, graffiti on cell walls and doors, leaking water, raw sewage in dayroom, rust in cells, temporary bunks, excessive noise, damaged clothing and bedding, retaliation, conditions of confinement in the suicide/isolation cell, no barber, unclean food slots, recorded attorney phone calls; and a claim of sexual and physical assault by Officer Langford. *Complt., ECF 1 at 11-22.*

## III. SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A. Standard

As Matthew is a prisoner proceeding in forma pauperis, the Court must screen his Complaint pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A. These statutes require the Court to review a prisoner's complaint and dismiss it or portions there of before it is served upon the defendants if it finds that the complaint is "frivolous," "fails to state a

claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune." A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must set forth "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* It must " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson*, 551 U.S. at 94; *Cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## B.  Analysis

Matthew's Complaint violates Rule 8 of the Federal Rules of Civil Procedure and therefore is subject to dismissal for failure to state a claim upon which relief may be granted.  Rule 8 sets forth the general rules of pleading and provides:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

The Supreme Court has explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3.  The factual allegations necessary to make that showing "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The Court has liberally construed claims regarding medical, mental health, and dental care; an ADA claim; numerous conditions of confinement claims; First Amendment claims; and an excessive force

claim. Matthew, however, has failed to provide sufficient facts to support his claims and has failed to link each claim to specific defendants. He makes only general and conclusory allegations which are insufficient to state a claim for relief. These deficiencies might be cured by a clearer statement of the claims, facts to support those claims, and a clearer statement of defendants' action. Matthew will be given leave to file an amended complaint, but he must meet the following legal standards.

## 1. Denial of Medical, Mental Health & Dental Care

Matthew was a pretrial detainee at all times relevant to his claims,[1] therefore, his claims for denial of medical, mental health, and/or dental care "arises from the due process clause of the fourteenth amendment and not from the eighth amendment . . . ." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986), (*rev'd on other grounds, Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)). Although a pretrial detainee's claim "arises under the due process clause, the eighth

---

[1]Matthew was convicted in this Court of being a felon in the possession of a firearm in violation of 18 U.S.C. § 922 on March 22, 2016. He is scheduled to be sentenced on August 3, 2016. *U.S. v. Matthew*, Criminal Action No. 15-cr-81-BLG-SPW

amendment guarantees provide a minimum standard of care for determining [the pretrial detainee's] rights, including his right to medical care." *Id.*

The Eighth Amendment requires that prisoners receive adequate medical, dental, and mental health care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)(medical care); *Hunt v. Dental Dept.*, 865 F.2d 198 (9th Cir. 1989) ("Dental care is one of the most important medical needs of inmates."); *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("deliberate indifference" standard also applies in cases involving the adequacy of mental health care in prisons). To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

Deliberate indifference under the Eighth Amendment involves the consideration of two elements: "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that

need." *McGuckin*, 974 F.2d at 1059; *see also Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care. Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)(*citing Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)).

The objective component of deliberate indifference requires the showing of a serious medical need. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." *McGuckin*, 974 F.2d at 1059 (9th Cir. 1992) (*quoting Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v.*

*Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(*quoting Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official."  *Frost*, 152 F.3d at 1128 (*quoting Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).

"This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Jett*, 439 F.3d at 1096 *citing McGuckin*, 974 F.2d at 1060.  "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  *Jett*, 439 F.3d at 1096.  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  Mere claims of "indifference,"

"negligence," or "medical malpractice" do not support a claim under §
1983. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980).

Matthew lists his physical disabilities and alleges that "all
medical, and a lot of correctional staff," were aware of these issues and
"have done extremely little or nothing at all to address the issues and
ease the pain." *Cmplt., ECF 1 at 11.* These allegations are conclusory
and insufficient to plausibly state a claim for relief. Matthew must
provide additional facts to support these claims. He must explain what
medical, mental health, and/or dental care he requires, who he
requested this care from, what was their response, what treatment he
has been provided, and how each failure to provide adequate care has
harmed him. In addition, it is not clear how long Matthew was
incarcerated at the YCDF. Therefore, he must clarify when he was
incarcerated at the YCDF and when each alleged incident of denial of
medical, mental health, and/or dental care occurred.

## 2. Americans with Disabilities Act

Title II of the ADA, 42 U.S.C. § 12101 et seq. prohibits
discrimination on the basis of a disability in the programs, services or

activities of a public entity.  It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The term "public entity" encompasses state correctional facilities.  *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).  The "ADA's broad language brings within its scope anything a public entity does," which "includes programs or services provided at jails, prisons, and any other custodial or correctional institution."  *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (internal quotation marks omitted).

The elements of a cause of action under Title II of the ADA are (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). The proper defendant in an ADA action is the public entity responsible for the alleged discrimination, not an individual officer.

The treatment, or lack of treatment of Matthew's various medical conditions does not provide a basis upon which to impose liability under the ADA. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010)(citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . .. The ADA does not create a remedy for medical malpractice.").

Matthew has failed to provide sufficient factual allegations to support an ADA claim. He does not allege that he is an individual with a disability, that he was qualified to participate or receive the benefit of jail services, that he was excluded from participation in or denied the benefits of the jail's services or was otherwise discriminated against by the public entity, or that such exclusion was because of a disability. As such, his ADA claim, as currently plead, fails to state a claim upon

which relief may be granted.

### 3. Conditions of Confinement

Pretrial detainees are protected from conditions of confinement which amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017-18 (9th Cir. 2010); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010). Since he was a pretrial detainee, Matthew's conditions of confinement claims should be raised under the Due Process Clause of the Fourteenth Amendment. The standard for claims brought by convicted prisoners under the Eighth Amendment, however, has long been used to analyze pretrial detainees' conditions of confinement claims. *Simmons*, 609 F.3d at 1017-18; *Clouthier*, 591 F.3d at 1242; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).[2] Thus, whether Matthew is raising claims regarding when he was a pretrial detainee or a convicted prisoner, the applicable standard is the same.

Jail officials "must provide humane conditions of confinement,"

---

[2]The Supreme Court has recently held that pretrial detainees have a lower burden than convicted inmates in excessive force cases, *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S.Ct. 2466 (2015), but that decision has not been held to apply to ordinary conditions of confinement cases.

including "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). To succeed on a conditions of confinement claim, a prisoner must show that (1) the defendant jail official's conduct deprived him or her of the minimal civilized measure of life's necessities (the objective component) and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety (the subjective component). *Id.* at 834. To show deliberate indifference, the prisoner must establish that the defendant knew of and disregarded an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may not be held liable if he or she did not know of the risk or took reasonable action in response to the risk. *Id.* at 844.

Matthew alleges he was subjected to a lack of access to an exercise yard (*ECF 1 at ¶ 8*), mold in the showers (*ECF 1 at ¶ 11*), clogged air vents (*ECF 1 at ¶ 12*), fire extinguisher outlets that were rusted shut (*ECF 1 at ¶* 13, overcrowding (*ECF 1 at ¶ 14*), a lack of tables (*ECF 1 at*

¶¶ *15-17*), poor food quality (*ECF 1 at ¶ 18*), overpriced canteen items (*ECF 1 at ¶ 19*), graffiti on cell walls and doors (*ECF 1 at ¶ 23*), leaking water (*ECF 1 at ¶ 24*), raw sewage in dayroom (*ECF 1 at ¶ 25*), rust in cells (*ECF 1 at ¶ 26*), temporary bunks (*ECF 1 at ¶ 27*), excessive noise (*ECF 1 at ¶ 30*), damaged clothing and bedding (*ECF 1 at ¶ 31*), conditions of confinement in the suicide/isolation cell (*ECF 1 at ¶ 34*), no barber (*ECF 1 at ¶ 35*), and unclean food slots (*ECF 1 at ¶ 36*).

Allegations of overcrowding, alone, are insufficient to state a claim under the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989); *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (*citing Hoptowit v. Ray*, 682 F.2d 132 1237, 1249 (9th Cir. 1982)). Where crowding causes an increase in violence or reduces the provision of other constitutionally required services, or reaches a level where the institution is no longer fit for human habitation, however, the prisoner may be able to state a claim. *See Balla*, 869 F.2d at 471; *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984); *Hoptowit*, 682 F.2d at 1248-49.

"[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731-32 (9th Cir. 2000); *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Matthew has not provided enough information as to the circumstances and duration of the jail and cell conditions to enable the Court to determine whether he has identified a sufficiently serious deprivation. *See Johnson*, 217 F.3d at 731. Furthermore, Matthew failed to allege any facts showing that the named defendants knew of the unsanitary or problematic conditions and acted with deliberate indifference. *See Farmer*, 511 U.S. at 837. Finally, he has failed to specifically identify a defendant responsible for these alleged deprivations.

Matthew's conditions of confinement claims, as currently plead, fail to state a federal claim.

### 4. Harassment

Matthew also alleges that many officers make up their own rules and antagonize, provoke, harass and try to incite detainees. *Cmplt., ECF 1 at ¶ 21.* Although he names some specific officers allegedly responsible for such harassment, "verbal harassment or abuse . . . [alone] is not sufficient to state a constitutional deprivation . . . ." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (citation and quotation marks omitted); *accord Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)(finding no constitutional violation in prison officials' verbal harassment of inmate). Matthew's claims of harassment fail to state a claim upon which relief may be granted.

### 5. First Amendment

Matthew has raised a number of claims which could be construed as violations of the First Amendment including his claims of retaliation (*ECF 1 at ¶¶ 7, 22*), broken telephone (*ECF 1 at ¶ 9*), no visits (*ECF 1*

*at ¶ 10*), no legal books or materials (*ECF 1 at ¶ 20*), and the recording of attorney phone calls (*ECF 1 at ¶ 37*).  None of these allegations is sufficient to state a First Amendment claim but Matthew will be given an opportunity to amend his allegations.

### a.  Retaliation

To establish a claim for retaliation in violation of the First Amendment in the prison context, a plaintiff must show:  1) a prison official took adverse action against him because of his protected conduct, 2) that action chilled his exercise of his constitutional rights, and 3) the action did not advance a legitimate correctional goal.  *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) *citing Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The adverse action need not be an independent constitutional violation.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  "[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."  *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).  "[T]iming can properly be considered as circumstantial evidence of retaliatory intent."  *Pratt v. Rowland*, 65

F.3d 802, 808 (9th Cir. 1995).

Matthew makes general allegations that he has been denied medical care for complaining (*ECF 1 at ¶¶ 7, 22*) but he has not specifically named a defendant responsible for such actions. He will be given an opportunity to amend this claim.

### b. Communications–Phone–Visitation

An inmate has a "First Amendment right ... to communicate with persons outside prison walls." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002). "Use of a telephone provides a means of exercising this right." *Id*. Inmates have a First Amendment right to telephone access, subject to reasonable security limitations. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).

Matthew makes general allegations of "broken phones" and "no visits" (*ECF 1 at ¶¶ 9, 10*) without providing any factual allegations in support of such claims. He does not name a defendant allegedly responsible and he provides no indication regarding how long phones may have been broken, if all the phones were broken, or why there were "no visits."

As currently plead, these allegations fail to state a claim.

### c.  Legal Materials

Prisons must provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (*citing Bounds v. Smith*, 430 U.S. 817, 825 (1977)).  There is no "abstract, freestanding right to a law library or legal assistance.  *Casey*, 518 U.S. at 351. Instead, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Casey,* 518 U.S. at 351.

To show a violation of this right to access to the courts, an inmate must demonstrate "actual injury," in that there was a "specific instance" in which he was denied access.  *Sands v. Lewis*, 886 F .2d 1166, 1171 (9th Cir. 1989); *see also Casey*, 518 U.S. at 349.  "The injury requirement is not satisfied by just any type of frustrated legal claim." *Casey,* 518 U.S. at 354-55.  Prisoners have a right to access to the courts only in relation to direct appeals from the convictions for which they were incarcerated, habeas petitions, or civil rights actions challenging

the conditions of their confinement. *Id.* This right of access to the courts "guarantees no particular methodology but rather the conferral of a capability-the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. Moreover, the right of access to courts is only a right to bring complaints to federal court and not a right to the discovery of such claims or to litigate them effectively once filed with a court. *Id.* at 354-55.

Matthew has not provided sufficient factual information to state a claim for denial of access to the courts.

### d. Recorded Attorney Calls

Liberally construed, Matthew's allegation that attorney phone calls were recorded could potentially state a claim under the Sixth Amendment to the United States Constitution. *See Nordstrom v. Ryan*, 762 F.3d 903, 909-910 (9th Cir. 2014). "When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the

criminal defendant." *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir. 2004). There are however, several problems with Matthew's claims. First, he fails to indicate what calls were recorded or how such recordings substantially prejudiced him. Second, Matthew fails to name a defendant responsible for such recordings.

As such, Matthew's claims regarding the recording of phone calls to attorneys, as currently plead, fails to state a claim upon which relief may be granted.

### 6. Excessive Force

In *Kingsley v. Hendrickson*, the United States Supreme Court held that a pretrial detainee bringing an excessive force claim "must show only that the force purposely or knowingly used against him was objectively unreasonable." —— U.S. ——, 135 S.Ct. 2466, 2472, 192 L.Ed.2d 416 (2015). Matthew makes a general allegation that at the end of December 2015 he was assaulted twice and sexually assault once by Officer Langford but provides no facts regarding the circumstances surrounding the alleged assaults or the manner of assault. Conclusory allegations such as these are insufficient to state a claim.

### 7. Defendants

The primary reason why Matthew's Complaint is subject to dismissal is because he has failed to link a number of his claims with a specific defendant or defendants. Instead, he alleges that "all 'parties/defendants' failed to act . . ." *Cmplt., ECF 1 at 6.*

In filing an amended complaint, Matthew must provide specific allegations against each individually named defendant and he must associate a defendant with each allegation. Conclusory statements that "Defendants" violated his constitutional rights are insufficient, particularly given the number of defendants named.

### a. Individual Defendants

Section 1983 imposes individual liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978). This can be established in two ways. First, an individual can be held liable for their own personal acts which directly cause an injury. But in order to make such a claim, a plaintiff must make specific factual allegations regarding what each defendant did or did not do. General

statements such as "violated my rights" are insufficient.

Secondly, an individual can be held liable in their individual capacity under a theory of supervisory liability. "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). Section 1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Monell*, 436 U.S. at 691-94. That is, a defendant cannot be held liable just because they supervise other employees. Instead, supervising officers can be held liable under § 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).

A supervisor may be liable: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence

in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

Allegations against supervisors which resemble "bald" and "conclusory" allegations should be dismissed. *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012). Allegations that a supervisory defendant had personal knowledge of a constitutional violation will be insufficient without "specific allegations regarding each Defendant's purported knowledge" of the violation. *Hydrick*, 669 F.3d at 942. If naming a Defendant as a supervisor, Matthew must allege "sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick*, 669 F.3d at 942 *citing Starr*, 652 F.3d at 1206–07.

### b. County Liability

A municipal entity like Yellowstone County has no respondeat superior liability under Section 1983; that is, the County has no liability under the theory that it is liable simply because it employs a person who has violated plaintiff's rights. *See Monell*, 436 U.S. at 691; *Taylor*

*v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). However, municipal

entities such as the County are "persons" subject to liability under 42

U.S.C. § 1983 where official policy or custom causes a constitutional

tort. *Monell*, 436 U.S. at 690.

To impose municipal liability under § 1983 for a violation of

constitutional rights, a plaintiff must show: "(1) that [the plaintiff]

possessed a constitutional right of which [he] was deprived; (2) that the

municipality had a policy; (3) that this policy amounts to deliberate

indifference to the plaintiff's constitutional right; and (4) that the policy

is the moving force behind the constitutional violation." *See Plumeau v.*

*School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)

(citations and internal quotations omitted). For municipal liability, a

plaintiff must plead sufficient facts regarding the specific nature of the

alleged policy, custom, or practice to allow the defendant to effectively

defend itself, and these facts must plausibly suggest that the plaintiff is

entitled to relief. *See AE v. County of Tulare*, 666 F.3d 631, 636–37 (9th

Cir. 2012). It is not sufficient to merely allege that a policy or custom

existed or that individual officers' wrongdoing conformed to a policy or

custom.  *See id.* at 636–68.

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Ratification of the decisions of a subordinate by an official with final decision-making authority can also be a policy for purposes of municipal liability under § 1983.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

### c.  John and Jane Does

The Complaint also names Doe defendants.  The use of Doe defendants in federal court is problematic, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), and ultimately unnecessary.  The Federal Rules of Civil Procedure prescribe the process Matthew must follow if he wishes to add as defendants subsequently identified individuals. Should Matthew learn the identities of parties he wishes to serve, he must promptly move pursuant to Rule 15 of the Federal Rules of Civil Procedure to file an amended complaint to add them as defendants. *See Brass v. County of Los Angeles*, 328 F.3d 1192, 1197–98 (9th Cir. 2003).

If the timing of his amended complaint raises questions as to the statute of limitations, Matthew must satisfy the requirements of Rule 15©), which is the controlling procedure for adding defendants whose identities were discovered after commencement of the action. Additionally, unknown persons cannot be served with process until they are identified by their real names and the court do not investigate the names and identities of unnamed defendants.

## IV. REQUEST FOR COUNSEL

Matthew seeks legal counsel in his Motion for Emergency Review. *Supplemental Statement, ECF 2-1.* He contends that he does not simply "seek" legal counsel or that he "chose" to bring this lawsuit but rather that this case was "forced" upon him due to the "extreme pain, suffering, deliberate indifference, deplorable living conditions and illnesses untreated." *ECF 2-1 at 1.*

No one, including incarcerated prisoners, has a constitutional right to be represented by appointed counsel when they file a civil lawsuit under 42 U.S.C. § 1983. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn on other grounds*, 154 F.3d 952, 962 (9th Cir.

1998). Unlike criminal cases, the statute that applies does not give a court the power to simply appoint an attorney. 28 U.S.C. § 1915 only allows the Court to "request" counsel to represent a litigant who is proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). A judge cannot order a lawyer to represent a plaintiff in a § 1983 lawsuit–a judge can merely request a lawyer to do so. *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989). Further, much different from a criminal case, a judge may only request counsel for an indigent plaintiff under "exceptional circumstances." 28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

> A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' Neither of these factors is dispositive and both must be viewed together before reaching a decision.

*Terrell*, 935 F.2d at 1017 (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (citations omitted).

Many indigent plaintiffs might fare better if represented by counsel, particularly in more complex areas such as discovery and the securing of expert testimony. However, this is not the test. *Rand*, 113

F.3d at 1525.  Plaintiffs representing themselves, or "pro se litigants," are rarely able to research and investigate facts easily.  This alone does not deem a case complex.  *See Wilborn*, 789 F.2d at 1331.  Factual dispute and thus anticipated examination of witnesses at trial does not establish exceptional circumstances supporting an appointment of counsel.  *Rand*, 113 F.3d at 1525.

At this early stage in the litigation, Matthew has not made a sufficient showing of exceptional circumstances.  He has not demonstrated a likelihood of success on the merits or his inability to articulate his claims pro se.  The request for counsel will be denied without prejudice.

## V.  CONCLUSION

28 U.S.C. §§ 1915, 1915A require a court to dismiss a complaint that fails to state a claim upon which relief may be granted, but these statutes do not deprive the district court of its discretion to grant or deny leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The Court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other

facts." *Lopez*, 203 F.3d. at 1127 (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

As currently plead, Matthew's Complaint fails to state a claim upon which relief may be granted and is subject to dismissal.  Because it may be possible to cure these defects by the allegation of additional facts, Matthew may file an amended complaint to provide clear and specific factual allegations to establish his claims and to provide specific allegations against each of the named defendants.

## A.  Amended complaint

Any amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original complaints by reference.  Once Matthew files an amended complaint, it replaces the original complaint, and that document will no longer serve a function in the case.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  If Matthew fails to use the court-approved form, the Court may strike the amended complaint and recommend the dismissal of this action.  Matthew may not change the nature of this suit by adding new, unrelated claims in his amended

complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir.2007) (no "buckshot" complaints).

Any amended complaint must consist of short, plain statements telling the Court:  (1) the rights Matthew believes were violated; (2) the name of the defendant(s) who violated the rights; (3) exactly what <u>each</u> defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Matthew's rights; (5) when the alleged actions took place; and (6) what injury Matthew suffered because of that defendant's conduct.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Matthew must repeat this process for each defendant.  Conclusory statements are not enough, nor are declarations that all defendants violated some law or statute.  Instead, Matthew must provide specific factual allegations for each element of each of his claims, and must state with specificity to which defendants each of his claims apply.  If Matthew fails to affirmatively link the conduct of a defendant with an injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.

**B.  Possible "Strike"**

If Matthew's amended complaint fails to state a claim upon which relief may be granted, the dismissal could count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

**C.  Possible Dismissal**

If Matthew fails to timely comply with every provision of this Order, this action may be dismissed.  *Ferdik*, 963 F.2d at 1260-61 (court may dismiss an action for failure to comply with any order of the court).

**D.  Address Change**

At all times during the pendency of this action, Matthew must

immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

## ORDER

1. Matthew's Motions to Proceed in Forma Pauperis (*ECF 4, 5, 7*) are granted.

2. The Clerk shall remove the word "LODGED" from the docket entry for the Complaint. *ECF 1.* The Complaint is deemed filed January 7, 2016.

3. Matthew's Motion for Leave to Amend his Complaint (*ECF 9*) is GRANTED. On or before June 17, 2016, Matthew may file an amended complaint on the form to be provided by the Clerk of Court.

Further the Court issues the following:

## RECOMMENDATIONS

Matthew's Motion for Emergency Review, Order of Injunction, and

Order of Protection (*ECF 2*) should be DENIED AS MOOT.

## NOTICE OF RIGHT TO OBJECT TO RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Matthew may file objections to the above Recommendations within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 13th day of May, 2016.

>  */s/ Carolyn S. Ostby*
> United States Magistrate Judge

---

[3]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.