IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MONTANA BILLINGS DIVISION

| | |
|---|---|
| DAVID JAMES MATTHEW<br>Plaintiff<br><br>US.<br><br>US Marshals' Daq, Patrick, and unknown Supervisor, Yellowstone County Commissioner (s) unknown, Yellowstone County Sheriff Mike Linder, Riverstone Health Clinic CEO unknown, Riverstone Health Clinic RN's: Scott, Amanda, Jessica, and LPN Jaylene Pinkerton, Yellowstone County Detention Facility Correctional Officers: Jake Dunker, Justin Prindle, Chris Myrup, Brian Degele, Carolyn Pluhar, 7 unknown C/o's, Lt Neiter, Lt. Metzger. | Cause No. CV 16-0002-BLG-SPW<br><br>AMENDED COMPLAINT<br><br>Jury Trial Demanded |

COMES NOW; David Matthew, the Plaintiff, in

pro se, to amend the Complaint. Plaintiff is presently incarcerated at Federal Correctional Institution Terminal Island in San Pedro CA. The incidents giving rise to Plaintiffs' Complaint occurred at a different facility named Yellowstone County Detention Facility located in Billings Montana.

Jurisdiction is asserted under 28 U.S.C. §1331 and 1343 because it raises a federal question, and a claim against a federal employee under Bivens v. Six Un-known Named Agents of Federal Bureau of Narcotics, 403 US. 388 (1971), and it raises civil rights claims against state or local government employee or entity under 42 U.S.C. §1983.

Plaintiff, as a pre-trial detainee, exhausted the administrative grievance process within the facility.

## PARTIES TO CURRENT LAWSUIT

A. <u>Plaintiff</u>, David James Matthew is a citizen of Montana, presently residing at Federal Correctional Institut-ion Terminal Island, P.O.Box 3007, San Pedro, CA. 90733.

B. Defendant Dag     is a citizen of Montana, employed as a United States Marshal in the United States Marshal Service, Billings Montana Office.

Defendant Patrick   is a citizen of Montana. employed as a United States Marshal in the United States Marshal Service, Billings Montana Office.

Defendant Unknown Supervisor   is a citizen of Montana, employed as a United States Marshal Supervisor in the United States Marshal Service, Billings Montana Office.

Defendant Mike Linder  is a citizen of Montana employed as Yellowstone County Sheriff.

Defendant Unknown Chief Executive Officer is a citizen of Montana employed as Riverstone Health Clinic CEO, 123 So. 27th Street, Billings Montana.

Defendant  Jaylene Pinkerton is a citizen of Montana employed as a Licensed Practical Nurse working at Riverstone Health Clinic, Billings Montana.

Defendant Scott is a citizen of Montana employed as an R.Nurse at Riverstone Health Clinic Billings Montana.

Defendant Amanda is a citizen of Montana, employed as a R. Nurse at Riverstone Health Clinic Billings Montana.

Defendant Jessica is a citizen of Montana employed as a Nurse at Riverstone Health Clinic, Billings Montana.

Defendant Lt. Metzger is a citizen of Montana, employed as a Leutenant at Yellowstone County Detention Facility.

Defendant Tim Neiter is a citizen of Montana employed as Assistant Commander at Yellowstone County Detention Facility.

Defendant Carolyn Pluhar is a citizen of Montana employed as a Sergeant at Yellowstone County Detention Facility.

Defendant 7 unknown Correctional Officers are citizens of Montana, employed as Correctional Officers at Yellowstone County Detention Facility.

Defendant Jake Dunker is a citizen of Montana

employed as a Correctional Officer at Yellowstone County Detention Facility.

Defendant Justin Arndle is a citizen of Montana employed as a Correctional Officer at Yellowstone County Detention Facility.

Defendant Chris Hyrup is a citizen of Montana employed as a correctional officer at Yellowstone County Detention Facility.

Defendant Heather Crockoff is a citizen of Montana employed as a Correctional Officer at Yellowstone County Detention Facility.

Defendant Brian Deagle is a citizen of Montana employed as a correctional officer at Yellowstone County Detention Facility.

INJURY (5)

Defendants broke Plaintiff's leg. Defendants injured Plaintiff's back and neck. Defendants caused Plaintiff to suffer extreme pain with no medical care or treatment for 38 days. Defendants caused Plaintiff to suffer mental trauma, anguish, anxiety, panic, depression, and PTSD. The surgery required to repair Plaintiff's broken leg caused by Defendants included a steel rod

to be perminantly hammered into the center of Plaintiffs'
femer and held in place with screws. (The screws still
need to be removed, and couse Plaintiff constant pain).


## STATEMENT OF CLAIMS

Count I:   United States Marshals' Dag, Patrick, and
Unknown Supervisor(s) all with the United States Marshal
Service, failed to protect, and failed to provide, facilitate,
expidite, necessary medical care and treatment before and
after Marshals knew of Plaintiff's injury. Violation of 14th
Amendment, Fifth Amendment.

Dates of incident:   January 19, 2016, through March 2016.

Supporting Facts:   On January 22, 2016, 2 US Marshals
named Dag and Patrick arrived at Yellowstone County
Detention Facility to transport Plaintiff to a hearing
in the Federal Court Building. Plaintiff was in a wheel
chair. Marshal Dag appeared angry and stated that
jail staff had advised him That Plaintiff was "faking an

injury." Plaintiff told both Marshals Daq and Patrick that Plaintiff's leg was broken by staff for no reason, and that Plaintiff could not walk or put any pressure whatsoever on the left broken leg without excruciating pain. Plaintiff advised both Daq and Patrick of the numerous request, both verbal and written, for medical care and treatment made to every Defendant, and how the requests were denied, ignored, or made fun of by Defendants. Plaintiff described how Defendants isolated Plaintiff in a cell in solitary confinement disciplinary unit without any reason, and no rules violation.

On the drive to the court house, Plaintiff described to Daq and Patrick what the C/O's did to Plaintiff, the details of which were; the C/O's assault and battery, the 2 knee or boot bruises on Plaintiffs' left thigh, the sound and pain when Defendants broke Plaintiffs' left femer, Plaintiff being strapped into a "restraint chair," and how Plaintiff lost consciousness, lack of medical care.

Both Dag and Patrick expressed verbal concern and they advised Plaintiff that they would take all of the information to their Supervisor, (name unknown), with the United States Marshal Service.

The next time Plaintiff encountered the Marshals was Febuary 16, 2016. Patrick and Dag transported Plaintiff to Billings Clinic for X-Rays of Plaintiffs' left leg. Those X Rays showed that Plaintiffs' left leg femur was severely broken and needed immediate surgery to repair the break, (27 days after Plaintiff told Marshals of leg break).

Before and after surgery Plaintiff reminded the Marshals of how Plaintiffs' leg had been broken and all details prior to and after the break. Plaintiff informed other Marshals, who worked security shifts at the hospital, of the details related to the break. Marshals Dag and Patrick advised Plaintiff that their supervisor was too busy to do anything. It appears to be a

Customary practice for the US Marshal Service by and
through their agents officers and employees to be
indifferent and take no action intentionally and
deliberately, willful blindness, + failure to respond reasonably.
Plaintiff suffered and endured horrible unbelievable pain
for nearly one full month. Both physical and mental
pain and torture every day and night. Plaintiff stayed
in constant fear that the Correctional Officers/Defendants would
attack again. From the time the Defendants broke Plaintiffs
leg until present, Plaintiff suffers pain in the left hip, leg,
and back, and has difficulty walking and sleeping without
      pain. Plaintiffs' left foot points out to the left
much farther than normal as though it is miss-aligned.
Plaintiff has not received after care, physical therapy, or
or suitable and adequate pain medication. Plaintiff
has not received mental health care, counseling, and
treatment for the stress, anxiety, panic attacks, depression,
PTSD, and trauma caused by the Defendants.

Count II:   The US Marshals allowed the Plaintiff to suffer excessive force by the Correctional officers, against the Plaintiff, a federal pretrial detainee. US Marshals having knowledge of the misconduct of Yellowstone County, and Yellowstone County Sheriff, by and through their officers agents and employees, used excessive force creating great bodily injury to Plaintiff caused by the assault and battery, a violation of the Due Process Clause of the Fifth and Fourteenth Amendments. C/o Retaliation, a violation of the First Amendment.

Date of incident:   January 19, 2016.

Supporting Facts:   On January 19, 2016, at approximatly 8 am,   Defendant Caylene Pinkerton denied Plaintiff his medications.  Pinkerton was a defendant in Plaintiffs' Complaint case number CV-15-00 38-BLG-TJC.  Pinkerton was accused in CV 15-0038- of denying Plaintiff his medications when she was

a nurse at the Big Horn County Jail in Hardin Montana, employed at Bighorn Valley Health Clinic, assigned under contract to provide medical care to Big Horn County Jail detainees, while Plaintiff was detained at Big Horn County Jail on a matter that was dismissed.

Plaintiff was a detainee at Yellowstone County Detention Facility some months later. Pinkerton had become employed with Riverstone Health Clinic in Billings Montana, who was contracted to provide medical services to detainees housed within the Yellowstone County Detention Facility. Pinkerton was assigned as LPN working inside the Detention Facility.

On the morning of January 19th, Defendant Pinkerton denied Plaintiff his medications, as Pinkerton had done months earlier at the Big Horn

County Jail. A short time later Pinkerton enlisted the services of Correctional Officers Prindle and Dunker to retaliate against Plaintiff on Pinkertons' behalf. Both Prindle and Dunker came to Plaintiffs' cell door and stated through the door that they were tired of Plaintiff harassing their co-workers and medical staff with his complaints and a lawsuit. C/o Dunker stated to Plaintiff, "You Feds think youre' all that. I'm going to show you who runs this Jail."

At 9 AM on January 19th C/o Prindle returned to Plaintiffs cell, and opened the door. Prindle stood just outside the door blocking Plaintiff in. Prindle asked Plaintiff what happened between Plaintiff and LPN Pinkerton. As Plaintiff began to explain how Pinkerton was denying Plaintiff his medications, Prindle calmly reached over to his left shoulder, keyed his radio microphone, and said in to the "mike"

that he needed help. Several C/o's, including Myrup, Dunker, and Crockett, imediatly came rushing into the unit as if they had been waiting just outside the unit door for their "cue". They came to Plantiff's cell door around C/o Prindle, but said and did nothing. Prindle had been smiling at Plantiff until the other C/o's arrived. All C/o's were wearing court ordered personal body video recorder cameras, however none of their incident recording cameras appeared to be turned on. Plantiff was still standing in his cell doorway. None of the C/o's attempted to close Plantiffs' cell door. Plantiff was stunned and confused by the C/o's actions and repeated the question, "What is going on?" About that time Leutenant Metzger came into the unit. Plantiff called out to Metzger for assistance. Metzger rushed toward Plantiff visibly red in the face

looking angry. As Metzger got close, he suddenly
screamed, "Get down now!", while striking Plaintiff
with left fist over Plaintiff's right eye, and his
right fist struck Plaintiff in the upper chest-throat
area. Metzger's fist made a silver dollar sized
bump over Plaintiff's right eye. Plaintiff put his hands
up to protect and distance himself from the assault,
while also backing deeper into the cell. Plaintiff turned
to his right and was instantly attacked from behind
by several C/O's. The attack caused Plaintiff to trip
over, and fall onto a portable overcrowding bunk
the jail had placed in every cell. After Plaintiff
was down on this bunk, Plaintiff's left leg was
hanging over the edge of the bunk. C/o Rindle had
climbed onto Plaintiff's upper body with his forearm
across Plaintiff's throat cutting off Plaintiff's breathing.
Other body(s) pinned Plaintiff's stomach and hip
area. Plaintiff was not moving, but trying to

breath, and in shock. Suddenly a huge weight slammed down on to Plaintiff's left leg still hanging over the edge of the bunk. It felt like someone jumped down on Plaintiff's thigh. The weight pushed Plaintiff's knee to the floor while Plaintiff's hips were pinned to the bunk approximatly 10" higher. At that moment Plaintiff heard and felt a loud snap sound and sensation. Plaintiff screamed out in pain and yelled out that, "I am disabled! "You broke my leg!" After Plaintiff yelled that his leg was broken, Plaintiff was punched in his back several times and a male voice said, "That's from Langford!" Plaintiff screamed out in pain again stating, "You just broke my leg!"

Plaintiff was then handcuffed behind his back so tightly around the left wrist that Plaintiff still has damage to nerves in his left wrist, and muscle

atrophy by Plaintiffs' left thumb that is usually evident. C/o's dragged Plaintiff up into a restraint chair. Someone removed the cuffs and C/o's strapped Plaintiff on to the chair where Plaintiff could not move, and breathing was difficult. Again Plaintiff told C/o's that he is disabled and that something was broken in his left leg-hip area.

C/o Anderson arrived on scene with a "cam-corder" on and recording, and asked all C/o's why they did not have their body camera recorders turned on. Plaintiff told Anderson that he thought his leg was broken. Anderson advised Plaintiff that he would be taken to medical.

C/o Crockett pushed Plaintiff out of the unit in the restraint chair. Upon reaching the main hall way C/o Dunker arrived and took over. Plaintiff again requested medical attention. Crockett said sarcasticly, "You don't have anything broken." Crockett remained

16

at the unit. Dunker then pushed Plaintiff down the main hallway in the direction of medical. As he pushed, he stated that the whole ordeal went as he had planned and predicted it would go. He said, "You think you can sue one of us and get away with it?" The hallway forked and Dunker did not go toward medical. He wheeled Plaintiff away from medical and toward the booking area. Dunker wheeled Plaintiff into a temporary holding cell still strapped into the restraint chair, shut the door and locked it. Plaintiff continuously requested medical care. Plaintiff told C/o Dunker several times that he was in extreme pain, was feeling dizzy, and that Plaintiff had a broken leg or hip. Dunker walked away and Plaintiff could hear laughter.

Shortly after the cell door was locked Plaintiff lost consciousness at least 2 times. Plaintiff believed he was having seizures. C/o's and possibly a nurse

came into the cell + released the straps that bound Plaintiff to the restraint chair. They lifted Plaintiff up from the chair, pulled the chair out, and shut the cell door, locking it. Both Plaintiffs legs felt weak and wobbly. Plaintiff had horrible pain in both legs and his back. Things went dark, and Plaintiff lost consciousness. Plaintiff "came to" laying on the cement floor in excruciating pain. Plaintiff tried to move but the pain worsened. Screaming in pain, Plaintiff cried out for help looking at the cell door and at the surveillance camera. No one opened the door. Plaintiff heard people laughing outside of the cell door. Plaintiff saw a shadow of someone looking in the window. A voice said to "shut up." No one came in to help.

After what seemed like an hour had passed, a C/o unlocked the cell door to let in nurse Scott. First, nurse Scott stated,      "Medical is all sick

and tired of your complaints and law suit." Scott grabed ahold of Plaintiffs' left leg and pushed and pulled it. Plaintiff screamed out in pain. Nurse Scott told Plaintiff to, "Shut up! Nothing is broken. There's no blood, just bruises." Nurse Scott told the C/o who was out of sight that Plaintiff was fine. Plaintiff yelled that he was not fine. Nurse left the cell. Plaintiff heard Scott say " He's ok. Just faking. Only bruises. "

Plaintiff layed there on the cement floor unable to move, and continued to call out for help over and over. Plaintiff was in tears from the pain. There was a survailance/security camera in the cell and Plaintiff pleaded into it for help. More time passed. Then an old mean nurse, Plaintiff believes was named Jessica, entered the cell. This female nurse pushed and pulled on Plaintiffs' left leg making Plaintiff scream. She said. "Cut it out. Nothing is broken. Just bruises."

On her way out of the cell she told someone that Plaintiff was fine. She told Plaintiff, "You'll get your Tylenol at med pass." She refused to give her name and left Plaintiff laying on the cement floor. Someone told Plaintiff that the nurse was named Jessica.

Sometime later C/o Dunker and C/o Degele came to the cell to move Plaintiff. They stood outside the cell and ordered Plaintiff to get up. Plaintiff told them that his leg or hip was broken and he could not move. After a couple of minutes, C/o Degele got behind Plaintiff. Degele lifted Plaintiff and pushed Plaintiff toward the cell door and C/o Dunker who was holding a wheel chair. Plaintiff screamed in pain again telling them that someting is broken in his leg or hip. Dunker pushed Plaintiff in the direction of his housing unit but stopped short and took Plaintiff into the disciplinary housing unit where Plaintiff was placed in solitary confinement in a cell that water

leaking from the sink onto the floor. Neither C/o would help Plaintiff from the wheel chair to the cell. A female, C/o Anderson, came up and helped Plaintiff from the chair and into the cell. Both C/o's Degele and Dunker just watched. C/o Dunker wheeled the wheelchair out of the unit when he left. Plaintiff was left with nothing, and no help. Later Plaintiff called to nurse Amanda and told her his leg was broken. She said to put in a Kite.

Claim II <u>Defendants Involved</u>: C/os Prindle, Dunker, Crockett, Degele, Myrup, and several unknown C/o's. Leutenant's Metzger and Neiter. Sergeant Pluhar, who did not come to the unit to defuse the situation. Nurse's Scott, Jessica, and Amanda, all 3 employees of Riverston Health Clinic in Billings. Riverstone Health Clinic CEO and board of directors. Yellowstone County Sheriff Mike Linder. Defendants all knew Plaintiffs' leg was broken. Plaintiff told Defendants that his leg was broken, and they

intentionally deliberatly denied Plaintiff adequate, necessary medical care and treatment and no care was shown, requested, or provided to Plaintiff for 28 days. Clo's Prindle and Dunker, that they were retaliating against Plaintiff on behalf of medical, (Complaints and law suit). Nurses did not care that the Plaintiff was injured, caused Plaintiff further harm, pain, and prolonged suffering, and showed retaliation against Plaintiff. Riverstone Heath Clinic, Yellowstone County, and Yellowstone County Sheriff were aware of their employees numerous unlawful human and civil rights violations. The County, Sheriff, and Clinic, have lost many law suits for their employees causing injury to detainees, yet they do nothing to correct the problems, injuries, and harm done by their employees, officers, and agents. Plaintiff sees this as sick and sadistic. The use of force was objectively un-reasonable as no rules were broken by Plaintiff.

C/o Degele informed the Plaintiff that Yellowstone County, Yellowstone County Sheriff, and Yellowstone County Detention facility Commander(s) are required to provide their employees with training against the use of excessive force, every year. Degele advised Plaintiff that there had been no excessive force training in over 5 years.

## STATEMENT OF CLAIMS

Count III: Cruel and unusual treatment, denial of medical care, treatment, and attention, and officials delay in getting-providing Plaintiff medical attention. Violations of Due Process Clause of the Fifth Amendment, and of the Eighth Amendment.

Dates of incident: January 19, through March 2016.

Supporting Facts: On January 19, 2016, at approximatly 9 Am, Plaintiff was attacked by Defendant C/o's Prindle,

Dunker, Myrup, Crockett, and 1 unknown C/o's, and leutenant Metzger. The attack came from behind while Plaintiff was inside his cell (CB #2). Defendants use of excessive force resulted in Defendants intentionally severely breaking Plaintiffs left femer bone, and causing injury to Plaintiffs back, neck, and head. Plaintiff believes that some of the oficers heard the loud snap that his left femer made when it snapped in half. Defendants heard Plaintiff scream out in pain and stated "Something is broken in my lea!" C/o Crockett said. "Stop exagerating, nothings broken."

Not one of the correctional staff Defendants listed made an attempt to get or give Plaintiff medical help, care, or treatment, even though they could see and hear that Plaintiff was in terrible pain and suffering.

Nurse Scott, Jessica, and Amanda, caused further pain and suffering, and did nothing to help. All Defendants knew that Plaintiff is physically and mentally disabled.

Plaintiff told many correctional staff and nurses including LPN Pinterton, as well as all Defendants that his leg is broken. Nurse Jessica told Plaintiff to, "Stop being a baby!" Defendants could be heard heckling Plaintiff while he was in solitary confinement, when Plaintiff was trying to make it to the shower or telephone. After Plaintiff received a wheel chair to use on his one hour out of the cell, Clo's would come and take the chair away. (One was Clo Shirley). On January 19th, 2016, Plaintiff told Clo Anderson that his leg was broken, as Anderson helped Plaintiff to the segregation cell. Degele and Dunker looked on. Anderson, (a female), assisted Plaintiff into the cell because Plaintiff could not walk. Plaintiff attempted to sit on the bunk and cried out in pain. After sitting down Plaintiff found that he was unable to either stand up or lay down due to

unbearable pain. C/o's would periodically come through the unit doing a welfare check or count. Plaintiff would tell each and every one of them that his leg was broken. For 2 days and nights Plaintiff could not move. A few C/o's claimed to have called medical. C/o's told Plaintiff that medical said that Plaintiff was ok, and was being isolated for observation. Plaintiff could not get up to get his medications from the nurses. The nurses could not or would not come inside Plaintiff's cell, so Plaintiff had to go without medications

After what seemed like 48 hours, Plaintiff pushed past the pain and layed down. Plaintiff could not sit back up for 2 more days, and had to urinate in a cup that was left inside the cell. Plaintiff continued to tell every person who came by his cell, that he needed help. Nurses told Plaintiff that if he

did not get up and come to the door he could not have his medications. After the first night, after Plaintiff was placed in solitary, Plaintiff was unable to get to the cell door to recieve his meds or food. C/o Crockett and other C/o's reached through the cell door tray slot and dropped Plaintiff's food trays on the cell floor. When they came to pick up the trays they saw that Plaintiff had not eaten. No one cared. Not one C/o opened the cell door and brought the food or medications to Plaintiff. I unknown nurse came into Plaintiffs cell around the 4th day Plaintiff was in solitary. She helped Plaintiff sit back up. Defendants, employees, agents, and officers, exibited customary practices of causing harm pain and suffering like it was standard procedure and policy approved at the highest levels. Due to the large number of complaints and law suits against Yellowstone County, Yellowstone County Sheriff, Riverstone Health Clinic, and their

employees, agents, and officers, for their actions and omissions, all Defendants had been put on notice and were aware of what was happening inside the Yellowstone County Detention Facility; (Example: C/o's Court Ordered to wear body camera recording devices on the outside of their uniforms. Required to wear, but not focused on to actually record the incidents, which might be contempt of a Court Order), including Marshals.

Plaintiff sent numerous requests and complaints to medical regarding his broken leg, medical, and mental health. No care or treatment was provided. No psychiatrist or psychologist was employed to work at the detention facility. Plaintiff was left to suffer. Plaintiff was forced to "waddle" on his right foot only, while dragging his broken leg, and holding on to the wall for support. No wheel chair or crutches were provided for a long time. As Plaintiff would move along the wall dragging his broken leg C/o's Dunker, Gretchel, and others, could be heard calling

Plaintiff pussy, sissy, faker, good actor, and laughing together. C/o Crockett said to Plaintiff, "Oh quit it! You can walk!" Dunker called Plaintiff pathetic, pussy, sexer, cho-mo, and a baby. Plaintiff talked with C/o Novskog about Plaintiffs treatment by Defendants. Novskog said that there is nothing he could do and that it was up to Sgt. Pluhar, and Lt. Metzger. Plaintiff sent a request to C/o Kellerman doing classification. Kellerman responded back that Plaintiff was in solitary for doing something to a nurse, however, Plaintiff never received a rules violation write up or disiplinary report.

Plaintiff was in physical and mental pain every day. Plaintiff could not sleep most of the time, and his back and leg muscles were cramped making the pain worse. The mental health problems Plaintiff had are now amplified. PTSD is bad, and not getting any better with time or present medications. Plaintiff

suffers constant physical, mental, and emotional pain, starting January 19, 2016, untill the present. The torture and distress seems endless to Plaintiff.

When finally returned to general housing at the jail, Plaintiff was made to sleep on the floor while his leg was still broken and untreated. Plaintiff was housed in cold cells where the cold tempretures caused his muscles to cramp more causing agonizing pain. So Defendants would not provide an extra blanket to Plaintiff. Plaintiff made every staff member who was close enough to hear him aware of his injuries, and of his suffering. Sometimes Plaintiffs' pain was so great that he would throw up. For almost a month Plaintiff sent requests to see a doctor. Many were never returned and the rest had frivolous remarks. Plaintiff also filed numerous "Inmate Complaint Forms". Of the few Inmate Complaints returned the dates are; 1-28-16, 2-16-16, 2-20-16, 3-4-16, 3-16-16. Of the medical

request forms, the few that were returned are dated: 1-20-16 x 2, 1-23-16, 1-27-16 x 3, 1-23-16, 1-28-16, 2-5-16 x 2, 3-2-16, 3-15-16, 3-16-16. There is no Inmate Grievance Process at Yellowstone County Detention Facility. Of the Defendants listed, none showed any concern or care for Plaintiffs injurys, harm, pain, and suffering. No care or treatment was given for Plaitifs severely broken leg for almost one month. US Marshals were made aware of the attack on Plaintiff and the subsequent broken leg. They did nothing. Plaintiff was in the care and custody of the US Marshal Service, and was housed as a pre-trial detainee at Yellowstone County Detention Facility at the request of the US Marshals. The US Marshals knew and should have known of the long history Yellowstone County has of abuse and civil rights violations against detainees housed there inside their grossly, neglagently, overcrowded jail. This

inaction by US Marshals, Yellowstone County, Yellow-stone County Sheriff, led to Plaintiffs injuries, and along with Riverstone Health Clinic, all unnecessarily Prolonged Plaintiffs' pain, anguish, and suffering, which has caused Plaintiff substantial harm that is not going away, and appears to all be perminant at this point in time.

All Defendants are being sued in their individual and their oficial capacities.

## DECLARATION IN VERIFICATION
### ( 28 U.S.C. Sec. 1746 )

I, David Matthew, herein after refured to as Plaintiff, do hereby affirm and declare under the penalty of perjury, (28 U.S.C. Sec. 1746), that the following facts are true and correct to the best of the Plaintiffs' personal knowlege, understanding, and belief.

1. Plaintiff is of the age of majority, of sound

mind, and competent to testify.

2. Plaintiff hereby affirms and declares under penalty of perjury, (28 U.S.C. Sec. 1746), that the facts stated in the forgoing Amended Complaint are true and correct to the best of the Plantiff's personal knowledge, understanding, and belief.

3. Plaintiff has nothing further to state at this time.

Plaintiff hereby affirms and declares under the penalty of perjury, (28 U.S.C. Sec. 1746), that the facts stated in the forgoing Declaration in Verification are true and correct to the best of the Plantiff's personal knowledge, understanding, and belief.

# REQUEST FOR RELIEF

WHEREFORE;   Plaintiff respectfully prays that this Court:

A.   Declare that the Defendants acts and omissions described herein violated Plaintiffs rights under the Constitution and laws of the United States;

B.   Order Defendants to pay compensatory damages in the amount of $50,000.00;

C.   Grant other just and equitable relief that this Honorable Court deems fair and just.

Conclusion:

Based on Plaintiffs Amended Complaint, the facts stated therein and the record of the Court, the Court must provide the remedy and relief demanded herein.

The Amended Complaint and forgoing Declaration in Verification are executed this 17th day of May, 2017.

_David Mathew_

David Mathew,   Plaintiff